Platt, J.
This is an appeal from an order of the Court of Chancery, denying a motion for dissolving an injunction, whereby the steam-boat of the appellant was restrained from running between Elizabeih-town Point in New-Jersey and the city of New- York.
The great question which arose in the case of Livingston and Fulton v. Van Ingen and others, (9 Johns. Rep. 507.) whether this state had the power to grant an exclusive right of navigating its waters with steam-boats, is again raised in this cause. That question was then elaborately and profoundly discussed on appeal in this court; and after mature consider ation, this court, by a unanimous decree, decided, that the statutes of this state for granting and securing to Livingston and Fulton, and their assigns, that exclusive privilege, were constitutional and valid.
Immediately after that decision, many persons who had resisted the claim to such exclusive privilege, yielding obedience to that decree, as settling the question by the highest judicial tribunal of the state, became purchasers of that privilege under Livingston and Fulton. The respondent, Aaron Ogden, stands before this court as an assignee under them, and claims the benefit of his purchase. His right is denied by the appellant ; 1st. On the old ground, that the state had no power to grant such exclusive privilege in any case; and, 2diy, That he (the appellant) derives authority to navigate his steam-boats under the act of Congress of the 18th of February, 1793, for enrolling and licensing coasting vessels, &c.
As to the first general question, I consider it as no longer open for discussion here. It would be trifling with the rights of individuals, and highly derogatory to the character of the court, if it were now to depart from its former deliberate decision on the very same point.
As to the second ground relied on by the appellant, to wit, *399 the coasting license, I am unable to discern how that can vary the merits of the question, as presented in the case of Liv Van Ingen. mgston v.
*The act of Congress for enrolling and licensing coasting ships, or vessels, (fee. enacts, that “ no ships or vessels, except such as shall be so enrolled and licensed, shall be deemed ships or vessels of the United States, entitled to the privileges of ships or vessels employed in the coasting trade or fisheries.” (sect. 1.) And the same act also declares, that every ship or vessel engaged in the coasting trade, &c., and not being so enrolled and licensed, “ shall pay the same fees and tonnage in every port of the United States at which she may arrive, as ships or vessels not belonging to a citizen or citizens of the United States ; and if she have on board any articles of foreign growth or manufacture, or distilled spirits other than sea-stores, the ship or vessel, with her tackle and lading, shall be forfeited.” (sect. 6.)
discrimmating From these provisions, and an examination of the various regulations of that statute, and from all the laws of the United States on that subject, it appears, that the only design of the federal government, in regard to the enrolling and licensing of vessels, was to establish a criterion of national character, with a view to enforce the laws which impose duties on American vessels, and those of foreign countries
The term “ license” seems not to be used in the sense imputed to it by the counsel for the appellant: that is, a permit to trade; or as giving a right of transit. Because it is perfectly clear, that such a vessel, coasting from one state to another, would have exactly the same right to trade, and the same right of transit, whether she had the coasting license or not. She does not, therefore, derive her right from the license; the only effect of which is,, to determine her national character, and the rate of duties which she is to pay.
Whatever may be the abstract right of Congress, to pass laws for regulating trade, which might come in collision, and conflict with the exclusive privilege granted by this state, it is sufficient, now, for the protection of the respondent, that the statute of the United States relied on by the appellant, is not of that character.
Whether Congress have the power to authorize the coasting trade to be carried on, in vessels propelled by steam, *so as to give a paramount right, in opposition to the special license given by this state, is a question not yet presented to us. No such act of Congress yet exists, and it will be time enough to discuss that question when it arises.
1 am decidedly of opinion, therefore, that the coasting license affords no aid or support to the title of the appellant, to run a steam-boat on our waters, in opposition to the laws of this state.
The real merits of this case fall precisely within the decision *400 of this court, in the case of Livingston, &c. v. Van Ingen. As a senator, I was a party to that decision; and concurred in it, for the reasons which were then assigned by the learned judges who delivered the opinion of the court. Those reasons are before the public: and I have not the vanity to believe, that I could add anything to'their force or perspicuity. I, therefore, deem it my only remaining duty to say, that in my judgment, the decree of his honor the chancellor, in this case, ought to be affirmed.

April 27th.

This being the unanimous opinion of the court, it was thereupon ordeRed, adjudged and decreed, that the decretal order of the Court of Chancery made in this cause, on the 6th of October, 1819, and from which order the appellant in this cause has appealed to this court, be, and the same is hereby, in all things, affirmed, with costs to be taxed and paid by the appellant to the respondent; and that the record be remitted, &c.
Decree of affirmance, (a)

 Vide Gibbons v. Ogden, 9 Wheaton's Rep. 1. The acts of the legislature of the state of New-York, granting to Robert R. Livingston and Robert Fulton the exclusive navigation of all the waters within the jurisdiction of that state, with boats moved by fire or steam, for a term of years, are repugnant to that clause of the constitution of the United States, which authorizes Congress to regulate commerce, so far &s the said acts prohibit vessels licensed, according to the laws of the United States, for carrying on the coasting trade, from navigating the said waters, by means of fire and steam.